C.T-J

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION
2014 DEC 19   PM 1: 50
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

CHIDIEBERE SARAH OTI,      §

        §

     Plaintiff,      §

        §

v.      §

        §     CIVIL ACTION NO. 4:13-cv-00816-A

GREEN OAKS SCC, LLC d/b/a GREEN   §

OAKS NURSING REHAB SENIOR CARE   §

CENTERS AND SENIOR CARE OF     §

GREEN OAKS, MARK MCKENZIE, JOHN §

HELLER, AND ANDREW KERR      §

        §

     Defendants.

**ORIGINAL**

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Robert E. Sheeder
Attorney-in-charge
Texas Bar No. 18174300
Robert.Sheeder@bgllp.com
Lauren A. West
Texas Bar No. 24070831
Lauren.West@bgllp.com

Bracewell & Giuliani LLP
1445 Ross Avenue, Suite 3800
Telephone: (214) 758-1643
Facsimile: (214) 758-8340

**ATTORNEYS FOR DEFENDANT**

**TABLE OF CONTENTS**

Page

I.     SUMMARY OF THE ARGUMENT ...................................................................1

II.    SUMMARY JUDGMENT EVIDENCE ............................................................3

     1.    Excerpts from the Deposition of Plaintiff Chidiebere Sarah
          Oti ("Pl. Depo. at Def. App. __"); and.................................................3

     2.    Declaration of Marina Zuza ("Zuza Decl. at Def. App.
          ¶__") .................................................................................................3

     3.    Declaration of Deborah Lacey ("Lacey Decl. at Def. App.
          ¶__") .................................................................................................3

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................4

IV.    ARGUMENT AND AUTHORITIES ..............................................................10

    A.    SUMMARY JUDGMENT STANDARD .........................................................10

    B.    PLAINTIFF'S CLAIM FOR UNPAID OVERTIME UNDER THE FLSA
       FAILS AS A MATTER OF LAW .................................................................11

     1.    Plaintiff cannot establish that she in fact performed work
          for which she was improperly compensated or present
          sufficient evidence demonstrating the amount and extent of
          such uncompensated overtime hours as a matter of just and
          reasonable interference. ....................................................................13

     2.    Additionally, Plaintiff's claim for unpaid overtime also
          fails because she cannot demonstrate that Defendant knew
          or had reason to know Plaintiff was working overtime
          hours for which she was not compensated.........................................17

     3.    Defendant's Time Records and Pay Records negate the
          reasonableness of any inferences that can be made from
          Plaintiff's "evidence"......................................................................20

    C.    PLAINTIFF'S "GAP-TIME" CLAIM FOR UNPAID, MISSED MEAL
       BREAKS FAILS AS A MATTER OF LAW.....................................................22

     1.    To the extent Plaintiff's gap time claim does not implicate
          minimum wage or overtime violations, she fails to state a
          cognizable claim under the FLSA....................................................22

     2.    Plaintiff's gap time claim fails because she cannot establish
          that she in fact worked uncompensated overtime, or the

**TABLE OF CONTENTS**
**(continued)**

Page

amount and extent of such unpaid overtime as a matter of
just and reasonable inference, because of missed meal
breaks or that Defendant knew or should have known she
was working through meal breaks and not receiving
compensation for such time. ...................................................24

    a.    Plaintiff fails to establish that she in fact worked
uncompensated overtime, or the amount and extent
of such unpaid overtime as a matter of just and
reasonable inference, as a result of missed meal
breaks. ..............................................................24

    b.    Plaintiff's claim for uncompensated overtime
resulting from allegedly missed meal breaks also
fails because she cannot show that Defendant knew
or had reason to know she was working through
meal breaks without compensation ..................................27

D.    PLAINTIFF CANNOT ESTABLISH A COGNIZABLE CLAIM OF
RETALIATION UNDER THE FLSA...........................................29

    1.    The FLSA's burden-shifting standard. .....................................30

    2.    Plaintiff fails to establish a *prima facie* case of retaliation
under the FLSA because she fails to establish a causal
connection between her engagement in protected activity
and her termination. ............................................31

    3.    Even assuming, *arguendo*, that Plaintiff could establish a
*prima facie* case of retaliation, Defendant sets forth a
legitimate, non-retaliatory reason for Plaintiff's
termination, and Plaintiff fails to demonstrate pretext...............33

    a.    Defendant sets forth a legitimate, non-retaliatory
reason for Plaintiff's termination...................................34

    b.    Plaintiff fails to demonstrate that Defendant's
proffered legitimate, non-retaliatory reason for her
termination is pretextual and that her protected
conduct was the "but-for" cause of her termination. ...............35

E.    EVEN IF PLAINTIFF COULD ESTABLISH THE REQUISITE ELEMENTS
FOR HER RETALIATION CLAIM, WHICH SHE CANNOT, SHE IS NOT
ENTITLED TO ANY DAMAGES FOR BACK OR FRONT PAY........................37

**TABLE OF CONTENTS**
**(continued)**

Page

1.    Plaintiff rejected Defendant's unconditional offer of
reinstatement to a substantially equivalent position. ..................................38

2.    Plaintiff's rejection of Defendant's unconditional offer of
reinstatement was unreasonable and not justified by any
"special circumstances." ...........................................................................38

V.    CONCLUSION AND REQUEST FOR RELIEF.............................................40

TABLE OF AUTHORITIES

Page

CASES

*Aldrup v. Caldera,*
    274 F.3d 282 (5th Cir. 2001) ........................................................................34

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................11

*Anderson v. Mount Clemens Pottery Co.,*
    328 U.S. 680 (1946) ........................................................................................11

*Ardoin v. Police Jury of Evangeline Parish,*
    547 Fed. Appx. 401 (5th Cir. 2013) ...............................................................31

*Block v. Kelly Servs.,*
    197 Fed. Appx. 346 (5th Cir. 2006) ...............................................................34

*Boehm v. American Broadcasting Co. Inc.,*
    929 F.2d 482 (1991) ........................................................................................37

*Carmichael v. Monarch Dental Corp.,*
    No. 3:12-cv-706-P, 2014 U.S. Dist. LEXIS 56944
    (N.D. Tex., Mar. 31, 2014) ...........................................11, 12, 16, 22, 23

*Carmody v. Kan. City Bd. of Police Comm'rs,*
    713 F.3d 401 (8th Cir. 2013) .........................................................................16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...................................................................................10, 11

*Chumbley v. Sealy, Inc.,*
    No. 4:08-cv-379-A, 2009 U.S. Dist. LEXIS 65839 (N.D. Tex., July 29, 2009) ...................38

*Cole v. City of Port Arthur, Texas,*
    No. 1:13-cv-176, 2014 U.S. Dist. LEXIS 96754 (E.D. Tex., July 16, 2014) ...................31, 35

*Conklin v. Senior Hous. Servs.,*
    No. 3:05-CV-0141-P, 2006 U.S. Dist. LEXIS 4308 (N.D. Tex., Feb. 3, 2006) ...................34

*Creely v. HCR Manor Care, Inc.,*
    920 F.Supp.2d 846, 851-52 (N.D. Ohio 2013) ........................................................28

*Dunlap v. Liberty Natural Resources Products, Inc.,*
    No. 3:12-cv-01635-SI, 2013 U.S. Dist. LEXIS 167165 (D. Or., Nov. 25, 2013) .............37, 39

*Espenscheid v. DirectSat USA, LLC,*
    No. 09-cv-625-bbc, 2011 U.S. Dist. LEXIS 154706 (W.D. Wis., Apr. 11, 2011) ...................23

**TABLE OF AUTHORITIES**
(continued)

Page

*Figgs v. Quick Fill Corporation,*
766 F.2d 901 (5th Cir. 1985) ...................................................................40

*Ford Motor Co. v. EEOC,*
458 U.S. 219, 233-34 (1982) ...........................................................37, 38

*Forrest v. Dynamic Security, Corp.,*
No. 00-3423, 2002 U.S. Dist. LEXIS 10377 (E.D. La., May 24, 2002)..................37

*Forrester v. Roth's I.G.A. Foodliner, Inc.,*
646 F.2d 413 (9th Cir. 1981) .......................................................18, 28

*Giandonato v. Sybron Corp.,*
804 F.2d 120 (10th Cir. 1986) ................................................................39

*Hagan v. Echostar Satellite, L.L.C.,*
529 F.3d 617 (5th Cir. 2008) ..........................................................30, 35

*Harvill v. Westward Communs., L.L.C.,*
433 F.3d 428 (5th Cir. 2005) ...............................................11, 13, 16, 18

*Holaway v. Stratasys, Inc.,*
No. 14-1146, 2014 U.S. App. LEXIS 21223 (8th Cir. 2014) ....................................16

*Ihegword v. Harris Cnty. Hosp. Dist.,*
555 F. App'x 372 (5th Cir. 2014) .............................................................11

*Ihegword v. Harris Cnty. Hosp. Dist.,*
929 F.Supp.2d. 635 (S.D. Tex. 2013) .........................................12, 13, 15, 17, 18, 27

*Jackson v. Cal-Western Packaging Corp.,*
602 F.3d 374 (5th Cir. 2010) ...............................................................36

*Joiner v. The Bd. of Trustees of the Flavius J. Witham Mem. Hosp.,*
No. 1:13-cv-555 WTL-DKL, 2014 U.S. Dist. LEXIS 96928, *20-21 (S.D. Ind., July 17, 2014) ........................................................................27

*Jones Turner v. Yellow Enterprise Sys., LLC,*
No. 3:07-cv-00218, CRS, 2014 U.S. Dist. LEXIS 43924 (W.D. Ky., Mar. 31, 2014)............29

*Jones v. Jefferson Parish,*
No. 12-2191, 2013 U.S. Dist. LEXIS 163836 (E.D. La. Nov. 18, 2013) ................................32

*Kanida v. Gulf Coast Med. Personnel LP,*
363 F.3d 568 (5th Cir. 2004) ...............................................................30

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Karna v. BP Corp. N. Am.,*
    No. 4:12-cv-0101, 2014 U.S. Dist. LEXIS 43855 (S.D. Tex., Mar. 31, 2014) ......................23

*Lackey v. SDT Waste and Debris Services, LLC,*
    No. 11-1087 Section "H" (4), 2014 U.S. Dist. LEXIS 108272, *9 (E.D. La., Aug. 6, 2014) ..........................................................................................................................35

*LaPlante v. Terraces of Lake Worth Rehabilitation Health Center, LLC,*
    725 F.Supp.2d. 1358 (S.D. Fla. 2010) ...............................................................................28

*Lewis Grocer Co. v. Holloway,*
    874 F.2d 1008 (5th Cir. 1989) ...........................................................................................37

*Long v. Eastfield College,*
    88 F.3d 300 (5th Cir. 1996) ...............................................................................................35

*Lundy v. Catholic Health Sys. of Long Island, Inc.,*
    711 F.3d 106 (2d. Cir. 2013)..............................................................................................22

*Mahoney v. Ernst & Young,*
    487 F. Supp. 2d 780 (S.D. Tex. 2006) ..........................................................................37, 39

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986).........................................................................................................11

*Miller v. Metro Ford Automobile Sales, Inc.,*
    519 Fed. App'x 850 (5th Cir. 2013) ...................................................................................36

*Morriss v. Concordia Univ.,*
    No. A-05-CA-043 LY, 2006 U.S. Dist. LEXIS 33190 (W.D. Tex., May 11, 2006)...............34

*Newton v. City of Henderson,*
    47 F.3d 746 (5th Cir. 1995) ..........................................................................................12, 18

*Nieddu v. Lifetime Fitness, Inc.,*
    No. H-12-2726, 2014 U.S. Dist. LEXIS 110870 (S.D. Tex., Aug. 12, 2014) ..................19, 29

*Pickney v. Express Automotive Group, Inc.,*
    No. 4:13-cv-02031, 2014 U.S. Dist. LEXIS (S.D. Tex., Sept. 25, 2014).........................12, 18

*Ragas v. Tennessee Gas Pipeline Co.,*
    136 F.3d 455 (5th Cir. 1998) .............................................................................................10

*Rios v. Rossotti,*
    252 F.3d 375 (5th Cir. 2001) .........................................................................................31, 35

**TABLE OF AUTHORITIES**

**(continued)**

Page

*Rogers v. Brauer Law Offices,*
No. CV-10-1693-PHX-LOA, 2012 U.S. Dist. LEXIS 16568 (D. Ariz., Feb. 10, 2012)..............
................................................................................................................................15, 17

*Rose v. Digital Convergence.Com Inc.,*
No. 3:00-cv-2057-X, 2011 U.S. Dist. LEXIS 4158 (N.D. Tex., March 30, 2001)..................12

*Sellers v. Delgado College,*
902 F.2d 1189 (5th Cir. 1990) ..................................................................................38

*Septimus v. Univ. of Houston,*
399 F.3d 601 (5th Cir. 2005) ....................................................................................35

*State Farm Life Ins. Co. v. Gutterman,*
896 F.2d 116 (5th Cir. 1990) ....................................................................................11

*Thomas v. Barton Lodge II, Ltd.,*
174 F.3d 636 (5th Cir. 1999) ....................................................................................11

*Vicknair v. La. Dep't of Pub. Safety & Corr.,*
555 F. App'x 325 (5th Cir. 2014) ..............................................................................32

*Vince v. Illinois Central School Bus, LLC,*
No. 09-C-5360, 2011 U.S. Dist. LEXIS 12858 (N.D. Ill., Feb. 9, 2011) ........................20, 21

*Von Friewalde v. Boeing Aerospace Ops., Inc.,*
339 Fed. App'x. 448 (5th Cir. 2009) ..........................................................................18

*White v. Baptist Memorial Health Care Corp.,*
699 F.3d 869 (6th Cir. 2012) ..............................................................18, 19, 24, 28

*White v. Denton County, No. 4:13cv13,*
*2014 U.S. Dist. LEXIS 43881 (E.D. Tex., Feb. 28, 2014)*......................................................30

**STATUTES**

29 U.S.C. § 201, *et. seq.*.............................................................................................1

**RULES**

Fed. R. Civ. P. 56(c) .................................................................................................10

Rule 56 of the Federal Rules of Civil Procedure ...........................................................1

Northern District of Texas Local Rule 56.5.....................................................................1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHIDIEBERE SARAH OTI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:13-cv-00816-A |
| GREEN OAKS SCC, LLC d/b/a GREEN | § | |
| OAKS NURSING REHAB SENIOR CARE | § | |
| CENTERS AND SENIOR CARE OF | § | |
| GREEN OAKS, MARK MCKENZIE, JOHN | § | |
| HELLER, AND ANDREW KERR | § | |
| | § | |
| Defendants. | | |

In accordance with Rule 56 of the Federal Rules of Civil Procedure, and Northern District of Texas Local Rule 56.5, Defendant Green Oaks SCC LLC d/b/a Senior Care of Green Oaks ("Defendant" or "Green Oaks"),[1] files this *Brief in Support of Defendant's Motion for Summary Judgment* ("Brief") asking the Court to grant summary judgment against all of Plaintiff's claims and, in support, states as follows:

## I. SUMMARY OF THE ARGUMENT

Plaintiff Chidiebere Sarah Oti ("Oti" or "Plaintiff") is a former employee of Green Oaks who was terminated on March 29, 2013. Plaintiff now brings several claims against Defendant in connection with her employment and termination from Green Oaks, specifically (1) unpaid overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*; (2) a gap time claim for unpaid work performed during meal breaks in violation of the FLSA; (3)

---

[1] The correct entity name is Green Oaks SCC LLC d/b/a Senior Care of Green Oaks. Individual Defendants Mark McKenzie, John Heller and Andrew Kerr were dismissed from the lawsuit and had a final judgment entered in their favor by a Memorandum Opinion and Order and a Final Judgment as to Certain Parties, both dated February 13, 2014.

Green Oaks' failure to let her take breaks in violation of the FLSA; and (4) retaliatory termination in violation of the FLSA.[2] However, with respect to each claim, even assuming they have been properly pled, Plaintiff fails to set forth a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law.

First, Plaintiff's claim for unpaid overtime is without merit, because Plaintiff cannot establish that she in fact performed overtime work for which she was improperly compensated, nor can she demonstrate the amount and extent of such unpaid overtime as a matter of just and reasonable inference. Furthermore, Plaintiff cannot establish that Defendant knew or should have known Plaintiff was working overtime hours for which she was not lawfully compensated.

Second, to the extent Plaintiff has even properly pled a claim for uncompensated time worked during meal breaks, Plaintiff's claim fails because (i) she received at least the minimum wage for all hours worked, and the FLSA does not regulate the payment of straight time wages, and (ii) to the extent this alleged time worked during meal breaks could potentially implicate unpaid overtime, Plaintiff fails to establish that she in fact performed overtime work for which she was improperly compensated, the amount and extent of such uncompensated overtime as a matter of just and reasonable inference, or that Defendant knew or should have known she was working through her meal breaks and not reporting this time. Moreover, to the extent Plaintiff purports to bring a claim under the FLSA based on her alleged inability to take breaks during her employment with Green Oaks, regardless of pay, such claim was not pled in Plaintiff's Complaint, nor is it a cognizable claim under the FLSA.

---

[2] In her Complaint, Plaintiff also vaguely asserted violations of the FLSA on behalf of other similarly situated individuals. *See* Complaint ¶ 25. However, in her deposition, Plaintiff repeatedly asserted that she is not bringing claims on behalf of anyone else and that she is only pursuing claims on behalf of herself. Pl. Depo. at Def. App. 149:9-23; 180:2-7.

Finally, Plaintiff cannot establish a claim for retaliation under the FLSA because she fails to demonstrate that a causal connection exists between any alleged protected activity and her termination. Moreover, Defendant asserts a legitimate, non-retaliatory reason for Plaintiff's termination – namely, her inappropriate and insubordinate conduct towards the Assistant Director of Nursing – and Plaintiff fails to carry her burden of demonstrating that Defendant's proffered reason is pretextual and that retaliation was the true, "but-for" cause of her termination. Moreover, even assuming, *arguendo*, that Plaintiff could establish a valid retaliation claim, she is not entitled to back pay or front pay damages, because, based upon her own deposition testimony, she unreasonably rejected Defendant's unconditional offer of reinstatement. Accordingly, Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's claims, including her claim for back pay and front pay damages in connection with her retaliation claim.

## II.  SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Green Oaks refers the Court to the pleadings on file in this matter. In addition, true and correct copies of the following summary judgment evidence are attached hereto and fully incorporated by reference herein:

1. Excerpts from the Deposition of Plaintiff Chidiebere Sarah Oti[3] ("Pl. Depo. at Def. App. ___"); and

2. Declaration of Marina Zuza ("Zuza Decl. at Def. App. ¶__").

3. Declaration of Deborah Lacey ("Lacey Decl. at Def. App. ¶__").

---

[3] Defendant feels it necessary to bring Plaintiff's unprecedented level of unresponsiveness during her deposition to the attention of the Judge. Plaintiff purposefully evaded even the most direct questions, unnecessarily dragging out her deposition and obfuscating basic facts. Several of the more egregious instances of Plaintiff's repeated and blatant unresponsiveness are found at the following points in Plaintiff's deposition transcript: Pl. Depo. at Def. App. 9:7-12:16; 76:11-77:18; 100:4-23; 102:11-103:24; 104:20-106:10.

### III.  STATEMENT OF UNDISPUTED MATERIAL FACTS[4]

Plaintiff was hired by Green Oaks on November 28, 2011 as a Licensed Vocational Nurse ("LVN"), also known as a Charge Nurse, in the Nursing Department.  Pl. Depo. at Def. App. 4:24-6:25.  Plaintiff was originally hired as a part-time employee working the weekend night shift.  Pl. Depo. at Def. App. 7:1-3; 71:16-72:7.  The regular weekend night shift schedule consisted of Saturday and Sunday nights, from 6 pm to 6 am. Pl. Depo. at Def. App. 71:16-72:11.  Accordingly, as a part-time employee working weekend nights, Plaintiff was only regularly scheduled to work 24 hours per week.  Id.  However, Plaintiff sometimes picked up additional shifts during the week; accordingly, her schedule at Green Oaks varied.  Pl. Depo. at Def. App. 73:17-74:21.  Effective October 22, 2012, Oti was reassigned as a full-time LVN Charge Nurse working the weekday night shift. Pl. Depo. at Def. App. 7:4-13; 76:11-14.  The regular schedule for the weekday night shift was Monday through Friday, 10 pm to 6 am, Pl. Depo. at Def. App. 76:15-77:8, although – as reflected in Plaintiff's Time Records[5] – she rarely worked the full five days per week.  Zuza Decl. at Def. App. 362-363 ¶ 6.  Each of Plaintiff's regularly scheduled shifts was eight hours long.  Pl. Depo. at Def. App. 76:15-77:8. As was the case when she was part time, Oti's schedule varied from week to week. Pl. Depo. at Def. App. 77:19-23.

Plaintiff's initial regular hourly rate of pay was $22.00 per hour, and her initial overtime rate was $33.00.  Pl. Depo. at Def. App. 8:13-9:3. Oti received a pay raise to $22.22 per hour in 2013.  Pl. Depo. at Def. App. 9:7-11; 186:6-10.  At all times during her employment with Green

---

[4] These facts are undisputed by Defendant only for the limited purpose of its Motion for Summary Judgment.
[5] True and correct copies of Plaintiff's Time Detail and Pay Detail Reports (collectively, "Time Records") are attached as Exhibits 1-2 to the Declaration of Marina Zuza. Zuza Decl. at Def. App. 362-363 ¶¶ 6-7. Oti's Time Detail Reports reflect Oti's hours worked – both regular and overtime – at Green Oaks between November 28, 2011 and September 15, 2012. Id. Oti's Pay Detail Report reflects Oti hours – both regular and overtime – worked from September 16, 2012 through March 24, 2013. Id.

Oaks, Oti received one-and-one-half her hourly pay rate for overtime hours worked. Pl. Depo. at Def. App. 9:4-6.

Plaintiff received a Policy Manual dated January 2010 at the commencement of her employment with Green Oaks, and subsequently received an updated April 2012 Policy Manual, that set forth the policies applicable to her as an employee of Green Oaks. Pl. Depo. at Def. App. 13:22-16:10, Ex. 7 at Def. App. 195-298, and Ex. 8 at Def. App. 300-349. These Policy Manuals contained Green Oak's overtime and payroll policies, including a Pay Schedule Policy, a Meal Breaks and Rest Breaks Policy, an Overtime policy, and a Paycheck Corrections Policy. Id. at Ex. 7 at Def. App. 230, 275, 281, 282; and Ex. 8 at Def. App. 316, 328, 334, 335. Oti was aware of these policies during her employment at Green Oaks. Pl. Depo. at Def. App. 19:2-12; 54:1-55:15; 61:16-22.

Green Oaks' Pay Schedule Policy, effective April 1, 2010, provided that "team members are responsible for clocking in and out of the time clock to ensure they are paid for time worked. Team members who miss a time punch will be required to complete a Missed Punch [Record]." Pl. Depo. at Def. App. 54:1-12, Ex. 7 at Def. App. 275, and Ex. 8 at Def. App. 328. Oti was aware of this policy and knew she was required to complete a Missed Punch Record ("MPR") for any time she worked that was not accurately reflected by her time clock entries.[6] Pl. Depo. at Def. App. 54:16-55:6. Additionally, Oti acknowledges it was her responsibility to clock out only after she finished her work. Pl. Depo. at Def. App. 148:7-149:8.

Pursuant to Green Oaks' Meal Breaks and Rest Breaks Policy (the "Meal Breaks Policy"), effective April 1, 2010, employees were afforded one 30-minute, unpaid meal break per shift. Pl. Depo. at Def. App. 17:10-18:8, Ex. 7 at Def. App. 230 and Ex. 8 at Def. App. 316.

---

[6] During Oti's employment, the "time clock" used by non-exempt employees to log their time was actually a fingerprint scan. Zuza Decl. at Def. App. 363 ¶ 7.

In addition, the Meal Breaks Policy provided that team members would automatically have 30 minutes deducted each shift for their meal breaks, and that, if a team member did not take a break on any given shift, he or she was to complete a payroll exception report – specifically, an MPR – in order to receive payment for this time.[7] Id.

Oti was aware of this policy and knew that if she worked through a meal break, she was required to complete and submit an MPR in order to receive compensation for this time. Pl. Depo. at Def. App. 19:2-21:6. In fact, Oti filled out and submitted a number of MPRs during her employment with Green Oaks.[8] Pl. Depo. at Def. App. 20:1-22; Ex. 9 at Def. App. 351-361. Oti acknowledges that the purpose of submitting these MPRs was to receive pay for the missed meal breaks and time reflected on the forms. Pl. Depo. at Def. App. 21:3-6. Oti received pay for all of the time she submitted on these MPRs. Pl. Depo. at Def. App. 20:1-21:18.

During Oti's employment, the MPRs were stored at the Nurses' Station in a clearly labeled binder. Zuza Decl. at Def. App. 363 ¶ 11; Pl. Depo. at Def. App. 47:19-49:1. The binder contained blank MPRs in the front, along with alphabetical tabs. Nurses were instructed to obtain blank MPRs from this binder and submit completed MPRs by placing them behind the tab that corresponded to the first letter of their last name. Zuza Decl. at Def. App. 363 ¶ 11. Nurses could also obtain blank MPRs from the People Strategy Representative[9] ("PSR"). Id.; Pl. Depo. at Def. App. 37:25-38:19; 47:19-50:4.

---

[7] In addition, Oti was instructed at her New Hire Orientation that if she worked over twelve hours in a single shift, she was to take two 30-minute meal breaks. Pl. Depo. at Def. App. 18:9-13.

[8] Specifically, Oti submitted MPRs for additional time worked on the following days: February 1, 2012; February 14, 2012 (bonus pay); September 14, 2012; September 15, 2012; September 16, 2012; September 25, 2012; September 28, 2012; September 29, 2012; September 30, 2012; October 22, 2012; December 31, 2012; January 12, 2013; January 19, 2013; January 20, 2013; and January 26, 2013. Pl. Depo. at Def. App. 20:1-21:18, Ex. 9 at Def. App. 351-361. Oti is not aware of any other MPRs she submitted other than the forms reflected in Exhibit 9 of her deposition. Pl. Depo. at Def. App. 21:19-22:5.

[9] The PSR functioned as the human resources representative at Green Oaks. Zuza Decl. at Def. App. 362 ¶ 2. There were two PSRs employed at Green Oaks during Oti's employment. First, Marina Zuza ("Zuza") was employed as Green Oaks' PSR from the time of Oti's hire through February 10, 2013. Id. Thereafter, Zuza was hired as the

Green Oaks' Overtime Policy, which was in effect during Plaintiff's employment, provided that "[o]vertime is paid for hours worked over 40 hours per week," and "hourly team members shall be paid overtime at the rate of time and one half." Pl. Depo. at Def. App. 55:7-56:4, Ex. 7 at Def. App. 281, and Ex. 8 at Def. App. 334. The Overtime Policy further provided that "[t]eam members may not work 'off the clock.' Team members must immediately report to the Administrator if their supervisor has required them to work for time for which they will not be compensated." Pl. Depo. at Def. App. 56:5-11, Ex. 7 at Def. App. 281, and Ex. 8 at Def. App. 334. The Overtime Policy also provided that "[o]vertime must be approved before working. Team members who work overtime without permission will be subject to disciplinary action." Pl. Depo. at Def. App. 58.10-60:4, Ex. 7 at Def. App. 281, and Ex. 8 at Def. App. 334. Oti knew it violated Green Oaks' Overtime Policy to work overtime without approval from her supervisor. Pl. Depo. at Def. App. 60:20-24.

Green Oaks' Paycheck Corrections Policy provided that "[t]eam members who believe there may be an error in their earnings should immediately notify their People Strategy Representative." Pl. Depo. at Def. App. 61:16-22, Ex. 7 at Def. App. 282, and Ex. 8 at Def. App. 335. Accordingly, Plaintiff knew that if she discovered an error in her paycheck, she was to immediately report this to the PSR and the error would be corrected. Pl. Depo. at Def. App. 62:19-63:9. Moreover, Plaintiff admits she reviewed each of her pay stubs in detail while she was employed by Green Oaks. Pl. Depo. at Def. App. 26:12-27:6.

Green Oaks' Corporate Compliance Policy, in effect throughout the duration of Oti's employment, prohibited retaliation against any team member for making a report. Pl. Depo. at

---

Regional People Strategy Manager at Senior Care Centers Management, LLC, a company that functioned as the management consultant to Green Oaks, and Patty Foucault ("Foucault") was hired to replace Zuza as PSR at Green Oaks on January 30, 2013, and trained with with Zuza until her final day with Green Oaks. Zuza Decl. at Def. App. 362 ¶ 3.

Def. App. 51:20-52:9; 53:5-12, Ex. 7 at Def. App. 262, and Ex. 8 at Def. App. 315. Plaintiff understood that Green Oaks forbade anyone from retaliating against her for complaining about overtime or unpaid mealtimes. Pl. Depo. at Def. App. 51:20-52:9; 53:5-12.

Green Oaks' Policy Manual also contained a Termination of Employment Policy, of which Oti was aware, that set forth a non-exhaustive list of behaviors that could subject an employee to <u>immediate termination</u>, including insubordination (to include refusal to perform work on the floor, shift, or in the manner assigned by your Supervisor, or refusal of the directive of any authorized management representative); unkindness in any form to fellow team members; quarreling or threatening language; and a lack of cooperation or cooperative attitude. Pl. Depo. at Def. App. 24:12-26:6, Ex. 7 at Def. App. 248-249, and Ex. 8 at Def. App. 303-304.

On or about March 25, 2013, Plaintiff had a telephone conversation with the then-Assistant Director of Nursing ("ADON") at Green Oaks, Kim Dimes ("Dimes") regarding, among other things, Plaintiff's hallway assignment. Pl. Depo. at Def. App. 107:24-108:5. Dimes, who was in charge of creating the nursing schedule, informed Oti that she was needed to continue working on the Medicare Hallway (also known as the 200 hallway). Pl. Depo. at Def. App. 74:22-75:1; 107:21-108:5. In response, Plaintiff told Dimes, "you're not my boss," and refused to continue working on the Medicare hallway. Pl. Depo. at Def. App. 94:11-22. Dimes told Plaintiff that if she did not like working the Medicare hallway, she could resign. Pl. Depo. at Def. App. 107:24-108:5. In response, Plaintiff reminded Dimes that Dimes had taken several patient charts home, which was against facility rules, and threatened to report her for doing so. Pl. Depo. at Def. App. 108:6-17. While Plaintiff contends her conduct did not constitute insubordination, because she was at home when this telephone exchange occurred, Plaintiff does not deny that she spoke rudely to Dimes during this phone call. Pl. Depo. at Def. App. 67:17-

68:1; 91:20-94:22. On March 29, 2013, Plaintiff was terminated for insubordinate and unprofessional behavior towards the ADON, as exhibited during the March 25, 2013 phone call.[10] Pl. Depo. at Def. App. 89:25-90:2; 91:15-100:3; Zuza Decl. at Def. App. 364 ¶ 12.

Several days following her termination, Plaintiff contacted Senior Care Centers Management, LLC ("SCCM"), a management company contracted by Green Oaks, to appeal her termination. Pl. Depo. at Def. App. 114:24-115:2; Zuza Decl. at Def. App. 363 ¶ 13. Zuza, the then-Regional People Strategy Manager at SCCM with consulting responsibility to the Green Oaks facility, spoke with Plaintiff about her concerns. Id. Approximately one week after Plaintiff's termination, Zuza contacted Plaintiff and offered Plaintiff her job back on behalf of Green Oaks.[11] Pl. Depo. at Def. App. 142:8-144:2. Zuza informed Plaintiff that she had investigated the grounds for Plaintiff's termination and determined that Plaintiff had done nothing wrong. Pl. Depo. at Def. App. 138:4-144:2. Accordingly, Zuza asked Plaintiff to return to her prior position at Green Oaks and offered her back pay for the time that had elapsed since her termination, along with a higher rate of pay. Id. Despite the fact that Zuza implored Plaintiff to come back to work at Green Oaks and told Plaintiff they would "work with [her]" on getting her whatever she wanted, Plaintiff turned down this offer because she was "scared" to work with Dimes again, although she did not convey this fear to Zuza. Pl. Depo. at Def. App. 138:4-145:8. Dimes was terminated from Green Oaks for reasons unrelated to Plaintiff on April 9, 2014. Zuza Decl. at Def. App. 363 ¶ 15.

---

[10] On or about March 24, 2013, a certified nurse assistant ("CNA") accused Plaintiff of assaulting her. Pl. Depo. at Def. App. 90-1:20-94:10; Zuza Decl. at Def. App. 363 ¶ 12. While Green Oaks collected several statements regarding the altercation from witnesses who overheard the commotion between Oti and the CNA prior to Plaintiff's termination, no witnesses actually reported seeing Plaintiff touch the CNA. Zuza Decl. at Def. App. 363 ¶ 14. Accordingly, while this allegation of assault was originally provided to Plaintiff as a reason for her termination, Zuza determined this uncorroborated assault allegation did not constitute a basis for Plaintiff's termination. Pl. Depo. at Def. App. 97:15-98:5; Zuza Decl. at Def. App. 363 ¶ 14.

[11] For purposes of its Motion for Summary Judgment only, Defendant will assume the facts, as Plaintiff alleges them to be, are true with respect to her post-termination communications with Zuza.

## IV. ARGUMENT AND AUTHORITIES

The Court must grant summary judgment against Plaintiff's claims, because Plaintiff fails to establish a genuine issue of material fact with respect to any of her claims, as further discussed below.

### A. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56(c), summary judgment in favor of the moving party is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

The moving party can satisfy this burden in one of two ways. If the moving party requests summary judgment regarding an issue on which the non-movant bears the burden of proof, then the moving party may discharge its burden by pointing to the absence of evidence supporting an element of the non-movant's claim or defense. If the issue is one on which the moving party bears the burden of proof, then the moving party has an affirmative evidentiary obligation to demonstrate the absence of a genuine issue for trial. *See id*. at 322-24.

Once the moving party satisfies its summary judgment burden, the burden shifts to the non-movant to demonstrate the existence of a triable issue of fact. *Id*. at 324. The Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Id*.

In evaluating the evidence, the court views all evidence in the light most favorable to the non-movant. *See Celotex*, 477 U.S. at 322-24. However, "'[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.*, quoting *Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the non-movant to submit significant probative evidence. *Id.* (internal citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment must be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50; see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment in favor of the moving party is warranted.).

**B. PLAINTIFF'S CLAIM FOR UNPAID OVERTIME UNDER THE FLSA FAILS AS A MATTER OF LAW**

An employee who brings suit for unpaid overtime compensation under the FLSA must first demonstrate that she has performed work for which she alleges she has not been compensated. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Harvill v. Westward Communs., L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005); *Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 374 (5th Cir. 2014); *Carmichael v. Monarch Dental Corp.*, No. 3:12-cv-706-P, 2014 U.S. Dist. LEXIS 56944, *9 (N.D. Tex., Mar. 31, 2014). To meet the requisite burden of proof, an employee must show that she has in fact performed work for which she was improperly compensated and sufficient evidence to demonstrate the amount and extent of such

uncompensated overtime as a matter of just and reasonable inference. *Id.* If an employee meets this burden, the burden then shifts to the employer to come forward with the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.*

In addition, the employee bears the burden of showing that she was "employed" during the alleged overtime hours. *Rose v. Digital Convergence.Com Inc.*, No. 3:00-cv-2057-X, 2011 U.S. Dist. LEXIS 4158, *4 (N.D. Tex., March 30, 2001); *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F.Supp.2d. 635, 663 (S.D. Tex. 2013); *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). For purposes of the FLSA, an employee is "employed" during the time for which she claims unpaid overtime if the employer "had knowledge, actual or constructive, that [she] was working." *Pickney v. Express Automotive Group, Inc.*, No. 4:13-cv-02031, 2014 U.S. Dist. LEXIS at *9 (S.D. Tex., Sept. 25, 2014), quoting *Newton,* 47 F.3d at 748, internal citations omitted.

Here, Plaintiff has not put forth any evidence, other than her own unsubstantiated and speculative assertions, that she performed overtime work for which she was improperly compensated or the amount and extent of unpaid overtime as a matter of just and reasonable inference. Furthermore, she fails to demonstrate that Defendant knew or had reason to know she was working overtime hours for which she was not compensated. Finally, even assuming, *arguendo*, that Plaintiff was able to meet her burden, Defendant's records establish the precise amount of work performed by Plaintiff and negate the reasonableness of any inferences that may be drawn from Plaintiff's "evidence." Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for unpaid overtime.

1.    <u>Plaintiff cannot establish that she in fact performed work for which she was improperly compensated or present sufficient evidence demonstrating the amount and extent of such uncompensated overtime hours as a matter of just and reasonable interference.</u>

Plaintiff is unable to demonstrate that she in fact performed overtime work for which she was improperly compensated or present sufficient evidence to show the amount and extent of such uncompensated overtime hours as a matter of just and reasonable inference. *See, e.g., Harvill*, 433 F.3d at 441; *Ihegword*, 929 F. Supp. 2d at 663.

As an initial matter, Plaintiff does not identify any inaccuracies or deficiencies in Defendant's time or payroll records. With respect to Plaintiff's Ceridian Payroll Records from Green Oaks ("Pay Records"), which are true and correct copies of Plaintiff's pay records from Green Oaks, Pl. Depo. pp. 134:17-135:7, Ex. 18[12]; Zuza Decl. at Def. App. 362-363 ¶¶ 4, 7, Plaintiff cannot identify any weeks that do not accurately reflect the amount of hours she worked. Pl. Depo. pp. 168:1-169:12. Similarly, with respect to Plaintiff's Time Detail and Pay Detail Reports (collectively, "Time Records") from Green Oaks, Plaintiff is not aware of any specific entries in these documents that do not accurately reflect her hours worked. Pl. Depo. pp. 170:14-17, 171:25-172:3, Exs. 19 and 20[13].    Moreover, on several occasions during her deposition, Plaintiff admitted that Green Oaks' documents reflected how much overtime she actually worked.    *See, e.g.,* Pl. Depo. pp. 80:13-20; 82:18-83:25; 178:5-11; 176:19-177:5. Furthermore, Plaintiff admitted she did not work off-the-clock during her employment with Green Oaks, Pl. Depo. p. 58:2-9, and she has no records of her own to contradict Green Oaks'

---

[12] Plaintiff was unable to authenticate the payroll records marked as Exhibit 18 to her deposition. Accordingly, the payroll records are authenticated by, and attached as Exhibit 3 to, the Zuza Declaration. Zuza Decl. at Def. App. 362 ¶ 4, Ex. 3 426-459.
[13] Plaintiff was unable to authenticate the time records marked as Exhibits 19 and 20 to her deposition. Accordingly, the time records are authenticated by, and attached as Exhibits 1 and2 to, the Zuza Declaration. *Id.* at 364-370 and 371-418.

Time Records and Pay Records. Pl. Depo. pp. 86:4-87:16; 136:8-25; 85:14-18; 175:11-176:18. Plaintiff was compensated for all the time reflected in her Time Records and was paid time-and-one-half her regularly hourly rate for all time worked over 40 per week reflected in her Time Records. Zuza Decl. at Def. App. 363 ¶ 8.

Incredibly, Plaintiff's overtime claim rests on her blanket assertions that she worked "a lot" of overtime, *see, e.g.,* Pl. Depo. pp. 79:7-80:3, although she cannot state how many of these overtime hours were actually uncompensated or when this uncompensated overtime work occurred, *see, e.g.,* Pl. Depo. pp. 125:25-127:21. Indeed, Plaintiff's deposition testimony reflects that Plaintiff's asserted estimates of her uncompensated overtime hours are purely speculative and unsupported by any evidence.

For example, Plaintiff estimates she worked "maybe" 10, 18, 22, 23, and then – finally – 28 hours of overtime during 2011 at Green Oaks. Pl. Depo. pp. 78:13-81:22. Plaintiff cannot recall in what weeks she worked these estimated overtime hours, nor on which specific days. Pl. Depo. pp. 85:1-3; 173:21-174:6. Plaintiff admits there was nothing upon which she based her estimate, and she is not sure whether she actually worked more or less overtime than the estimate she provided. Pl. Depo. pp. 173:21-174:24. Moreover, Plaintiff herself admits that she "thinks" she was paid for all of her overtime hours in 2011. Pl. Depo. pp. 83:6-9.

Similarly, Plaintiff contends she worked "a lot" of overtime during 2012 at Green Oaks, estimating that she worked "about 254" hours of overtime during this year, but admits she is "just guessing." Pl. Depo. pp. 79:7-80:3; 81:23-82:4. Furthermore, Plaintiff does not recall on which dates she worked this overtime, or even in which weeks, nor does she know even approximately how many overtime hours she worked per week. Pl. Depo. pp. 174:25-176:18. Plaintiff admits she calculated her estimated 254 hours of overtime by "estimation," and that she

does not have any documents to support this estimate. Pl. Depo. pp. 175:11-176:18. Moreover, Plaintiff admits that Green Oaks paid her for overtime in 2012, she's not sure if Green Oaks paid her for all of it, and she doesn't know how many hours of the estimated 254 hours of overtime were actually uncompensated. Pl. Depo. pp. 83:10-84:8. In short, Plaintiff admits she does not know how much unpaid overtime she incurred in 2012 for which she is suing Green Oaks. *Id.*

Finally, Plaintiff vacillates again with respect to her estimate of how much overtime she worked in 2013, estimating that she worked "maybe" "20-something," 18, then "maybe about 50, 60" overtime hours during this year. Pl. Depo. p. 82:5-17. Again, Plaintiff does not recall on which dates or in which weeks she worked overtime, and admits she has nothing upon which she bases her estimates. Pl. Depo. pp. 85:14-18; 177:6-178:4. Moreover, Plaintiff does not know how many of these estimated overtime hours were actually unpaid. Pl. Depo. p. 84:9-24. In short, Plaintiff's deposition testimony makes it clear that she does not *know* or even have a basis to estimate how much overtime she is alleging she worked during her employment at Green Oaks, nor does she know when she allegedly worked this overtime or how much of this alleged overtime was actually uncompensated overtime. *See, e.g.*, Pl. Depo. 125:25-127:21.

Such unsubstantiated and speculative assertions of unpaid overtime are insufficient to demonstrate the amount and extent of unpaid overtime as a matter of just and reasonable inference, as is required to survive a summary judgment motion. *Ihegword*, 929 F.Supp.2d. at 668 (holding that the plaintiff's estimate of the uncompensated overtime she worked was not only unsubstantiated, but also speculative, and an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference), aff'd 555 Fed. Appx. 372 (5th Cir. 2014); *see, also, Rogers v. Brauer Law Offices*, No. CV-10-1693-PHX-LOA,, 2012 U.S. Dist.

LEXIS 16568, *16 (D. Ariz., Feb. 10, 2012) (holding that the plaintiff's contradictory statements and inconsistent testimony regarding the numbers of hours she worked do not create a genuine issue of material fact).

In *Carmichael*, under strikingly similar factual circumstances, the United States District Court for the Northern District of Texas determined that the plaintiff failed to present evidence demonstrating either that she worked uncompensated overtime or the amount and extent of such uncompensated overtime by just and reasonable inference. 2014 U.S. Dist. LEXIS 56944 at *9-10, 13. In *Carmichael*, the plaintiff had merely asserted, in a conclusory fashion akin to Plaintiff's, that she worked overtime hours for which she was not compensated. *Id.*, at *10. The *Carmichael* plaintiff similarly failed to point to any specific pay period for which her paystubs did not accurately reflect the number of hours worked and failed to identify any paperwork on which she relied to reach the amount of unpaid overtime to which she contended she was entitled. *Id.*, at *10-11. Accordingly, summary judgment for the employer on the plaintiff's unsupported claim for unpaid overtime compensation was warranted. *Id.* at *13; *see, also, Holaway v. Stratasys, Inc.*, No. 14-1146, 2014 U.S. App. LEXIS 21223, *6-7 (8th Cir. 2014) (the plaintiff's contradictory and bare assertions of overtime hours worked, along with his failure to put forth any evidence regarding specific weeks in which he worked beyond forty hours, to provide a meaningful explanation of how he arrived at his final estimate of overtime hours, or to check his hours worked against any business records of defendant was insufficient to establish the amount and extent of overtime worked as a matter of just and reasonable inference); *Harvill*, 433 F.3d at 441-42 (upholding the district court's grant of summary judgment to employer on employee's claim for unpaid overtime because the employee offered no evidence that she actually worked the overtime hours she alleged); *Carmody v. Kan. City Bd. of Police Comm'rs,*

713 F.3d 401, 407 (8th Cir. 2013) (granting summary judgment to defendants on plaintiffs' claim for unpaid overtime wages because the plaintiffs failed to identify any record evidence showing actual damages from unpaid work in excess of 40 hours per week; without record evidence of a single hour worked over 40 hours for which they did not receive overtime wages or flextime, plaintiffs' unsupported estimations of the unpaid hours due were not enough).

Because Plaintiff was paid for all the time reflected in her Time Records and cannot point to *any* evidence – other than her own unsubstantiated and conflicting assertions – that supports her claim that she in fact worked additional, uncompensated overtime hours or that establishes the amount and extent of such unpaid overtime as a matter of just and reasonable inference, Defendant is entitled to summary judgment on Plaintiff's claim for unpaid overtime. *See, e.g., Ihegword*, 929 F.Supp.2d at 668 (because plaintiff has not submitted any evidence other than her own unsubstantiated assertions that she worked an estimated twelve hours of unpaid overtime per week, plaintiff has failed to raise a genuine issue of material fact for trial); aff'd 555 Fed. Appx. 372; *Rogers*, 2012 U.S. Dist. LEXIS 16568 at *15 (finding no genuine issue of material fact regarding whether the plaintiff performed work for which she was improperly compensated where the evidence showed that the defendant paid the plaintiff for all the hours recorded in its time records, and where the plaintiff failed to specify any other hours that she worked for which she did not receive compensation and admitted she did not keep records of her time).

    2.    <u>Additionally, Plaintiff's claim for unpaid overtime also fails because she cannot demonstrate that Defendant knew or had reason to know Plaintiff was working overtime hours for which she was not compensated.</u>

Even if Plaintiff could demonstrate that she worked overtime hours for which she was not properly compensated, which she cannot, along with sufficient evidence to establish the amount and extent of such overtime hours as a matter of just and reasonable inference, which she cannot, Plaintiff fails to demonstrate that Defendant either knew or should have known she was working

and not being properly compensated for the overtime hours for which she now seeks compensation.

"An employee cannot [ ] perform overtime work without the employer's knowledge or contrary to the employer's direction and then assert a right to be paid." *Pickney*, 2014 U.S. Dist. LEXIS at *10, quoting *Ihegword*, 929 F.Supp.2d at 663. Where an "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." *Harvill*, 433 F.3d at 441, quoting *Newton*, 47 F.3d at 748 (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). Moreover, "[t]he relevant knowledge is not 'I know that the employee was working,' but 'I know the employee was working and not reporting his time.'" *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012), quoting *Forrester*, 646 F.2d at 414.

Here, Plaintiff admits she was responsible for clocking in and out at the beginning and end of her shifts and for ensuring that the clock-in and clock-out times accurately reflected her time worked. Pl. Depo. pp. 85:19-86:3; 54:1-55:6. Moreover, Plaintiff admits she was aware of Defendant's policy prohibiting both off-the-clock work and unauthorized overtime, Pl. Depo. pp. 56:5-18; 60:20-24, along with her responsibility to report any additional time not captured by the time clock on an MPR. Pl. Depo. pp. 54:1-55:6. Plaintiff admits she was always paid for time she submitted on MPRs. Pl. Depo. pp. 21:7-18; 179:20-180:1. Therefore, to the extent Plaintiff now asserts she worked additional overtime that was not reflected on her Time Records, it is evident that she failed to follow Green Oaks' established policy – of which she was unquestionably aware – for reporting such overtime. Accordingly, Green Oaks cannot now be held liable for such alleged unreported overtime. *See, e.g., Von Friewalde v. Boeing Aerospace*

*Ops., Inc.,* 339 Fed. App'x. 448, 460 (5th Cir. 2009) ("[A]n employee has a duty to notify his employer when he is working extra hours…[W]e have expressly rejected the notion that an employer does not have the right to require an employee to adhere to its procedures for claiming overtime."); *White,* 699 F.3d at 876 (holding that, under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process; when the employee fails to follow reasonable time reporting procedures, she prevents the employer from knowing its obligation to compensate the employee); *Nieddu v. Lifetime Fitness, Inc.*, No. H-12-2726, 2014 U.S. Dist. LEXIS 110870, *41, 58-59 (S.D. Tex., Aug. 12, 2014) (holding that the plaintiff was precluded from claiming minimum wage and overtime violations where the employer had reasonable time-reporting policies and procedures in place, noting that the employer was entitled to rely on its employee to comply with its timekeeping policies and to assume that the employe was not falsifying his time worked).

Finally, throughout the entire period of her employment, Plaintiff was regularly scheduled to work the night shift. *See* Pl. Depo. pp. 71:16-72:11; 76:11-77:2; Zuza Decl. at Def. App. 362-363 ¶ 6. Shift supervisors and members of management were not regularly assigned to work the night shift. Id. As a result, Green Oaks had no way of observing Plaintiff was working additional hours or overtime hours that were not reflected by her time clock entries or on any submitted MPRs. Id.

Accordingly, Green Oaks cannot be held liable for Plaintiff's alleged uncompensated overtime because, to the extent she actually worked such overtime hours, she failed to follow Green Oaks' timekeeping procedures for reporting such time and Green Oaks had no other way of knowing that Plaintiff was working additional, uncompensated overtime hours. Accordingly,

Defendant is entitled to summary judgment on her claim for unpaid overtime on this additional basis.

> 3. <u>Defendant's Time Records and Pay Records negate the reasonableness of any inferences that can be made from Plaintiff's "evidence"</u>

Because Plaintiff has failed to satisfy her burden of demonstrating that she worked uncompensated overtime or the amount and extent of such overtime as a matter of just and reasonable inference, the burden does not shift to Defendant to disprove Plaintiff's claims. *See Vince v. Illinois Central School Bus, LLC*, No. 09-C-5360, 2011 U.S. Dist. LEXIS 12858, 36-37* (N.D. Ill., Feb. 9, 2011) (noting that, given the conclusory nature of the plaintiff's allegations of unpaid overtime, the defendants did not have the burden to disprove the plaintiff's claim). However, even assuming, *arguendo*, that it did, Defendant's Time Records and Pay Records – coupled with Plaintiff's inability to articulate any deficiencies therein and her admission that she did not work off-the-clock – constitute sufficient evidence to establish the precise amount of work performed by Plaintiff and to negate the reasonableness of any inferences that could possibly be made from Plaintiff's "evidence."

For example, while Plaintiff claims to have worked an estimated 28 hours of overtime in 2011, Pl. Depo. pp. 81:10-22, her 2011 Time Records – in which, as noted above, Plaintiff is unable to identify any inaccuracies – reflect that she worked a mere .25 hours of overtime during one week in 2011. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def. App. 461. Moreover, during the remaining four weeks in which she was employed by Green Oaks in 2011, Plaintiff's Time Records reflect that she only worked between 25.25 and 27.75 hours per week. Id. Similarly, in 2013, Plaintiff contends she worked approximately 50 to 60 hours of overtime, Pl. Depo. pp. 82:5-17, but her Time Records belie such an assertion, reflecting that she in fact worked <u>no</u> overtime hours during 2013. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def.

App. 465-466. With respect to 2012, while Plaintiff claims to have worked an estimated 254 hours of overtime, Pl. Depo. pp. 205:23-206:4, her Time Records reflect that Plaintiff worked only 62.75 hours of overtime and that she often worked under 40 hours per week. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def. App. 461-466. It is illogical to assume that Plaintiff worked the extensive overtime she alleges, but actually recorded far less than 40 hours during some of the weeks in which she alleges this overtime was worked. *See, e.g., Vince*, 2011 U.S. Dist. LEXIS 12858 at *37 (observing that, during some of the weeks in which the plaintiff contended to have worked extensive overtime hours, her payroll records showed that she was paid for working less than 40 hours, and concluding that it was not reasonable to infer that the plaintiff would submit time records showing she worked less than 40 hours when she in fact worked 80 or more).

Accordingly, because Plaintiff has failed to (i) establish that she worked any overtime for which she was improperly compensated; (ii) put forth sufficient evidence demonstrating the amount and extent of such unpaid overtime as a matter of just and reasonable inference; or (iii) show that Green Oaks knew or should have known about such uncompensated overtime, and Defendant's Time Records and Pay Records for Plaintiff establish the precise amount of overtime Plaintiff worked – for which she was properly compensated – and negate any inferences that could possibly be made from Plaintiff's "evidence," Defendant is entitled to summary judgment on Plaintiff's claim for unpaid overtime.

C.   **PLAINTIFF'S "GAP-TIME" CLAIM FOR UNPAID, MISSED MEAL BREAKS FAILS AS A MATTER OF LAW**[14]

In addition to her claims for unpaid overtime, Plaintiff purports to bring a claim for time worked during unpaid meal breaks. Specifically, Plaintiff asserts there were deductions taken from her pay for 30-minute meal breaks, even though she performed work during this time, and that she is claiming entitlement to such unpaid work time in this lawsuit. Pl. Depo. p. 157:7-16.

As an initial matter, Defendant notes that Plaintiff has only pled claims for unpaid overtime and retaliation in violation of the FLSA in her Complaint. *See* Plaintiff's Complaint pp. 3-5. Plaintiff has not pled a claim for unpaid time worked during meal breaks. Accordingly, to the extent such claim does not implicate unpaid overtime, it is not properly before the Court, and the time to amend has expired. However, even if it had been properly pled, Plaintiff's claim for unpaid time worked during meal breaks – also known as a "gap time" claim – fails with respect to both the weeks in which she worked under 40 hours and those in which she worked over 40 hours for the reasons discussed below.

1.   To the extent Plaintiff's gap time claim does not implicate minimum wage or overtime violations, she fails to state a cognizable claim under the FLSA.

A gap time claim "is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week, but seeks recovery for unpaid work under 40 hours." *Carmichael*, 2014 U.S. Dist. LEXIS 56944 at *6, quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d. Cir. 2013).

---

[14] To the extent Plaintiff contends Green Oaks violated the FLSA by failing to ensure that she took breaks – irrespective of pay – during her shift, this claim was not plead in her Complaint. Moreover, even if she had properly pled this claim, it necessarily fails as a matter of law, because the FLSA does not impose any requirements upon an employer to provide breaks to its employees.

In *Carmichael*, the District Court for the Northern District of Texas observed that "[w]hile the Fifth Circuit has yet to address the viability of gap time claims, this Court, as well as others in this circuit, have held that gap time claims that do not implicate the minimum wage or overtime pay requirements are generally not cognizable under the FLSA." *Carmichael*, 2014 U.S. Dist. LEXIS 56944 at *6-7. Gap time claims are only cognizable where an employer's failure to pay straight time results in its failure to pay overtime correctly or in its failure to pay minimum wage over a given workweek. *Id.* Accordingly, to the extent Plaintiff's claims for unpaid missed meal breaks fall within weeks that she worked under 40 hours and would not implicate overtime or the minimum wage, her gap time claim is not cognizable under the FLSA. *Id; see also, Karna v. BP Corp. N. Am.*, No. 4:12-cv-0101, 2014 U.S. Dist. LEXIS 43855, *14 (S.D. Tex., Mar. 31, 2014) ("[w]hile Section 6 of the FLSA guarantees a minimum wage, it does not provide a right of action for employees to recover unpaid compensation in excess of that minimum wage. Consequently, courts have routinely found that such "gap time" claims are not cognizable under the FLSA.")[15]

Plaintiff's Time Records reveal that, even assuming, *arguendo*, Plaintiff worked through every meal break for which time was automatically deducted during her employment at Green Oaks, unpaid overtime would only be implicated in 19 of the 70 weeks in which Plaintiff was employed. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def. App. 461-466. Moreover, Plaintiff admits she was always paid at least the hourly minimum wage. Pl. Depo. pp. 146:10-20. Accordingly, with respect to the 51 weeks in which Plaintiff would not have worked overtime

---

[15] Even with respect to Plaintiff's claims for unpaid gap time occurring in weeks in which she worked overtime, at least one court has concluded that such claims are similarly not cognizable under the FLSA. *See Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 U.S. Dist. LEXIS 154706, *33-35 (W.D. Wis., Apr. 11, 2011) (holding that gap time claims even in weeks in which the plaintiff worked overtime are not covered under the FLSA).

even assuming, *arguendo*, that she had worked through every meal for which time was deducted, Plaintiff's claim for time worked during unpaid meal breaks necessarily fails.

2.   Plaintiff's gap time claim fails because she cannot establish that she in fact worked uncompensated overtime, or the amount and extent of such unpaid overtime as a matter of just and reasonable inference, because of missed meal breaks or that Defendant knew or should have known she was working through meal breaks and not receiving compensation for such time.

For reasons similar to those stated above with respect to her unpaid overtime claim, Plaintiff's gap time claim fails. Specifically, this claim fails because Plaintiff cannot demonstrate that she in fact worked overtime for which she was improperly compensated, or the amount and extent of such uncompensated overtime as a matter of just and reasonable inference, as a result work allegedly performed during unpaid meal breaks. Moreover, Plaintiff cannot demonstrate that Defendant knew or should have known she was working through meal breaks for which she was not submitting MPRs. *See White*, 699 F.3d at 873 (observing that a claim for non-payment of work during an established mealtime is analytically similar to an unpaid overtime claim).

a.   Plaintiff fails to establish that she in fact worked uncompensated overtime, or the amount and extent of such unpaid overtime as a matter of just and reasonable inference, as a result of missed meal breaks.

Plaintiff cannot meet her burden of proving that she actually worked uncompensated overtime hours resulting from work she allegedly performed during unpaid meal breaks because she fails to provide anything more than her own unsubstantiated and speculative assertions regarding the number of meal breaks through which she worked without compensation and she cannot identify with any specificity when she worked through these meal breaks. Moreover, Plaintiff's Time Records reflect that Plaintiff's estimates regarding the number of missed meal breaks, even if true, often could not possibly implicate overtime.

For example, in 2011, Plaintiff estimates she missed seven meal breaks for which she was not paid, but she cannot recall the dates of those meal breaks or even the weeks in which they

fell.  Pl. Depo. pp. 157:17-159:18. Plaintiff even admits that her estimate of seven missed, unpaid meal breaks is just that – an estimate or approximation – and that it is not based on anything.  Id.  Moreover, Plaintiff's Time Records reflect that – of the five weeks during which Plaintiff was employed by Green Oaks in 2011 – she only worked overtime during her first week and would not have worked over 40 hours in any of the other four weeks even if she had worked through every meal break for which time was automatically deducted. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def. App. 461. Accordingly, Plaintiff fails to establish that she is owed *any* uncompensated overtime due to work performed during unpaid meal breaks in 2011 or provide sufficient evidence of the amount and extent of such uncompensated overtime as a matter of just and reasonable inference.

Similarly, Plaintiff's Time Records reflect that she did not work over 40 hours during *any* week in 2013, nor would she have worked over 40 hours *even if* she worked through every unpaid meal period.  Id. at Def. App. 465-466.  Accordingly, while Plaintiff provides an estimated number of meal breaks through which she worked for each month in 2013, Pl. Depo. pp. 43:19-44:18, even assuming her unsupported and conclusory estimations to be true,[16] she still fails to establish that she is owed *any* uncompensated overtime resulting from work performed during unpaid meal breaks in 2013.

With respect to  each month in 2012, Plaintiff also provides an estimated number of meal breaks through which she allegedly worked without compensation. Pl. Depo. pp. 40:14-44:18; 161:5-166:14.  As was the case in 2011 and 2013, Plaintiff's Time Records reflect that – in April, June, July and December of 2012 – she did not work over 40 hours, nor would she have worked over 40 hours even if she had worked through every meal break. *See* Lacey Decl. at Def.

---

[16] Plaintiff admits that her estimates of the number of missed meal breaks for which she did not receive pay in 2013 are not based upon any documents she reviewed. Pl. Depo. pp. 166:15-167:17.

App. 459 ¶ 2, Ex. 1 at Def. App. 462-464. Accordingly, she is unable to establish that she is owed any uncompensated overtime resulting from work performed during unpaid meal breaks in April, June, July or December of 2012.

Moreover, with respect to several of the remaining months in 2012, because Plaintiff cannot provide the specific dates of the meal breaks through which she allegedly worked, nor even the weeks in which they fell, Pl. Depo. pp. 159:19-160:24, she is unable to establish how many of her allegedly missed meal breaks actually implicate unpaid overtime. For example, in May 2012, Plaintiff estimates she worked through 12 meal breaks, Pl. Depo. pp. 40:14-42:16; 159:19-160:12, and her Time Records reflect that time was automatically deducted for 20 meal periods. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def. App. 461-465. However, Plaintiff did not work over 40 hours in any week during the month of May 2012. Moreover, even if she worked through every unpaid meal break during the May 2012, only one unpaid meal period during one week could *potentially* implicate overtime. *See* Lacey Decl. at Def. App. 459 ¶ 2, Ex. 1 at Def. App. 462. However, because Plaintiff is unable to provide details regarding when she worked through the estimated 12 meal breaks in May, she is unable to show that she in fact worked through *any* meal breaks in May of 2012 that resulted in her working uncompensated overtime hours.

Finally, Plaintiff admits that her estimates of the number of missed meal breaks for each month in 2012 are not based on any documents or a review of her actual hours worked. Pl. Depo. pp. 162:19-163:4. Accordingly, Plaintiff's unsupported estimates of the number of meal breaks through which she worked in 2012 are based solely upon conjecture and speculation. It is well-established that groundless and unsupported assertions such as these are insufficient to establish the amount and extent of unpaid overtime as a matter of just and reasonable inference,

as is necessary to survive a summary judgment motion. *See, e.g, Ihegword*, 929 F.Supp.2d. at 668 (the plaintiff failed to raise a genuine issue of material fact for trial where she failed to submit any evidence other than her own unsubstantiated assertions that she worked an estimated 12 hours of overtime her week; unsubstantiated and speculative estimates of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference); *see, also, Joiner v. The Bd. of Trustees of the Flavius J. Witham Mem. Hosp.*, No. 1:13-cv-555 WTL-DKL, 2014 U.S. Dist. LEXIS 96928, *20-21 (S.D. Ind., July 17, 2014) (summary judgment granted to employer on plaintiff's claims for uncompensated meal breaks because, despite claims of repeated interruptions during meal breaks, the plaintiffs were unable to articulate specific instances of when their meal breaks were interrupted and not compensated; general assertions that supervisor interrupted the plaintiffs' meal breaks all of the time, without evidence to support it, is insufficient to overcome a motion for summary judgment).

> b.    Plaintiff's claim for uncompensated overtime resulting from allegedly missed meal breaks also fails because she cannot show that Defendant knew or had reason to know she was working through meal breaks without compensation.

Plaintiff's claim for unpaid time worked during meal breaks also fails because she is unable to demonstrate that Defendant knew or had reason to know she was working through such meal breaks without compensation.

Defendant had an automatic deduction system, pursuant to which 30 minutes or an hour was deducted for meal breaks, depending on the length of the shift worked. Pl. Depo. pp. 17:10-19:1; Zuza Decl. at Def. App. 363 ¶ 10. If an employee worked through one of their meal breaks, they were required to first obtain an MPR from the PSR or the MPR binder at the Nurses' Station and then submit the completed MPR to the PSR or by using the MPR binder at

the Nurses' Station.  Pl. Depo. pp. 18:15-19:12; Zuza Decl. at Def. App. 363 ¶¶ 10-11.  By submitting a completed MPR, an employee received compensation for the time so indicated on the form.  Pl. Depo. pp. 18:15-19:24; 179:20-180:1; Zuza Decl. at Def. App. 363 ¶¶ 10-11. Plaintiff was aware of this procedure.  Pl. Depo. pp. 18:15-22:23; 179:13-19.  Moreover, Plaintiff followed this procedure on a number of occasions and was paid for the time reflected on the MPRs she submitted. Pl. Depo. pp. 21:19-22:23; 44:23-46:4.

An automatic meal deduction system is lawful under the FLSA. *White*, 699 F.3d at 875; *LaPlante v. Terraces of Lake Worth Rehabilitation Health Center, LLC*, 725 F.Supp.2d. 1358, 1362 (S.D. Fla. 2010).  In *Creely v. HCR Manor Care, Inc.*, the District Court for the Northern District of Ohio, after observing that an auto-deduction policy is lawful under the FLSA, noted that "because this system requires employees to cancel a deduction if they worked through a meal break, shifting the burden of monitoring missed meal breaks to the employees themselves, the auto-deduct policy standing alone cannot form the basis of an alleged FLSA violation." 920 F.Supp.2d 846, 851-52 (N.D. Ohio 2013). Here, especially since Plaintiff generally worked the night shift, and there were no members of management or supervisors on duty during this time, Green Oaks had no way of observing whether Plaintiff was working through her meal breaks to the extent she did not otherwise report this time on an MPR. *See* Zuza Decl. at Def. App. 362-363 ¶ 6.[17]

While Plaintiff now contends to have worked through almost every meal break during her employment at Green Oaks, the evidence reflects that she submitted numerous MPRs for missed

---

[17] Moreover, to the extent Plaintiff alleges that she complained to members of management about not being able to take breaks, this still does not impute the requisite knowledge to Defendant, namely that Plaintiff was working through her meal breaks and not reporting her time. *See, e.g., White*, 699 F.3d at 875 (observing that "[t]he relevant knowledge is not 'I know that the employee was working,' but 'I know the employee was working and not reporting his time.'"), *quoting Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

meal breaks through the end of January 2013. Pl. Depo. pp. 19:25-21:18, Ex. 9 at Def. App. 351-361. It is unreasonable to assume she would only submit MPRs for some – but not nearly all – of her missed meal periods, especially since she was receiving pay for the meals through which she worked that were reported on these MPRs. Pl. Depo. pp. 19:25-21:18;44:23-46:4. Moreover, to the extent Plaintiff failed to take advantage of Defendant's established procedures for reporting time worked during missed meal breaks, Plaintiff cannot now claim that she is entitled to unpaid overtime for unreported time allegedly worked during meal breaks. *Jones Turner v. Yellow Enterprise Sys., LLC*, No. 3:07-cv-00218, CRS, 2014 U.S. Dist. LEXIS 43924, *16 (W.D. Ky., Mar. 31, 2014) (holding that plaintiffs' failure to comply with the defendant's missed lunch slip policy precluded them from obtaining compensation for lunch breaks they failed to report); *Nieddu*, 2014 U.S. Dist. LEXIS 110870 at *58-59 (employee precluded from claiming minimum wage or overtime violations where employer had reasonable time-reporting procedures in place and had no actual or constructive knowledge that the plaintiff deliberately chose not to follow them). Accordingly, in addition to the reasons stated above, because Plaintiff failed to follow Defendant's established procedure for reporting time worked during meal breaks – and thereby thwarted Defendant's ability to know she was actually working such uncompensated hours – Defendant is entitled to summary judgment on Plaintiff's "gap time" claim for time allegedly worked during unpaid meal breaks.

**D.    PLAINTIFF CANNOT ESTABLISH A COGNIZABLE CLAIM OF RETALIATION UNDER THE FLSA.**

Plaintiff alleges her termination from Green Oaks was retaliatory in violation of the FLSA.[18] *See* Complaint ¶¶ 28-31; Pl. Depo. p. 118:4-6. However, Plaintiff's retaliation claim

---

[18] Despite including a retaliation claim in her Complaint, it became clear during Plaintiff's deposition that she had no comprehension of what an FLSA retaliation claim actually consisted. *See, e.g.,* Pl. Depo. pp. 116:4-124:25.

fails as a matter of law because she cannot demonstrate that a causal connection exists between any alleged protected activity and her termination, as required to establish her requisite *prima facie* case of retaliation under the FLSA. Moreover, even assuming, *arguendo*, Plaintiff could establish her *prima facie* case, Defendant sets forth a legitimate, non-retaliatory reason for Plaintiff's termination, namely, Plaintiff's insubordinate and unprofessional behavior towards Green Oak's ADON. Finally, Plaintiff fails to carry her ultimate burden to show that retaliation was Defendant's true motive for her termination and that protected activity was the "but-for" cause of her termination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim under the FLSA as a matter of law.

      1.    <u>The FLSA's burden-shifting standard.</u>

The *McDonnell Douglas* burden-shifting standard used in Title VII retaliation cases is applied in the context of retaliation claims brought under the FLSA. *See White v. Denton County, No. 4:13cv13, 2014 U.S. Dist. LEXIS 43881, \*20-21 (E.D. Tex., Feb. 28, 2014); Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 623 (5ᵗʰ Cir. 2008).* Accordingly, to survive a motion for summary judgment on a claim for retaliation under the FLSA, a plaintiff must first demonstrate a *prima facie* case of retaliation by showing (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Hagan, 529 F.3d at 623.* If a plaintiff meets her burden of establishing a *prima facie* case, the defendant must then articulate a legitimate, non-retaliatory reason for its decision. *Hagan,* 529 F.3d at 623. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Hagan,* 529 F.3d at 623. At this final stage of the analysis, the plaintiff must show the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct. *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5ᵗʰ Cir. 2004); *Denton County,* 2014 U.S. Dist.

LEXIS 43881 at *22. The ultimate burden of persuading the trier of fact that the defendant unlawfully retaliated against the plaintiff for engaging in the protected activity remains at all times with the plaintiff. *Cole v. City of Port Arthur, Texas*, No. 1:13-cv-176, 2014 U.S. Dist. LEXIS 96754, *60 (E.D. Tex., July 16, 2014); *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).

2. <u>Plaintiff fails to establish a *prima facie* case of retaliation under the FLSA because she fails to establish a causal connection between her engagement in protected activity and her termination.</u>

As discussed more fully below, Plaintiff cannot establish a *prima facie* case of retaliation because she fails to set forth any evidence of a causal connection between any alleged protected activity and her termination.  Plaintiff asserts in her Complaint that she was discharged in retaliation for complaints about not receiving overtime compensation.[19] *See* Complaint ¶¶ 29-31. While Defendant denies that Plaintiff raised any such complaints with Green Oaks' management or her supervisors, even assuming, *arguendo*, for purposes of this Motion for Summary Judgment, that Plaintiff could demonstrate that she engaged in such protected activity prior to her termination, she also must also demonstrate a causal connection between this alleged protected activity and subsequent adverse action in order to complete her *prima facie* case. *See, e.g., Ardoin v. Police Jury of Evangeline Parish*, 547 Fed. Appx. 401, 403 (5th Cir. 2013). A causal link is established when the evidence demonstrates that the employer's decision to take an adverse action was based in part on knowledge of the employee's protected activity. *Cole*, 2014

---

[19] The only "complaints" about unpaid overtime about which Plaintiff testified were allegedly the result of unfulfilled requests made in 2013 to the then-PSR, Foucault, along with other members of management, for MPR forms to submit additional overtime and meal break time worked. *See, e.g.,* Pl. Depo. pp. 28:6-29:6, 150:22-151:10, 131:8-132:11; 36:1-39:20.  While Plaintiff alleges she never received the requested MPR to report this additional time, her testimony reflects that – to the extent Foucault was responsible for providing her with these forms - Foucault was new at this time and did not know where they were. Pl. Depo. pp. 29:7-31:6. Moreover, Plaintiff could have obtained this form from the MPR binder at the Nurses' Station. Pl. Depo. pp. 48:6-49:1; Zuza Decl. at Def. App. 363 ¶ 11.

U.S. Dist. LEXIS 96754 at *48. Plaintiff fails to demonstrate the existence of this requisite causal link.

Here, Plaintiff openly admits she was told at the time of her termination that she was being fired because of her insubordination and allegations that she had assaulted another employee, Pl. Depo. pp. 67:1-69:14, and that she has no knowledge of anything else that factored into her termination. Pl. Depo. pp. 189:11-190:16. Accordingly, besides her own conclusory assertion that her termination was "retaliatory," Pl. Depo. 118:4-18, Plaintiff sets forth no evidence – direct or circumstantial – to support an inference that a causal connection exists between any protected activity and her termination. In the context of summary judgment, a plaintiff's subjective belief, without more, that an adverse employment action was retaliatory is insufficient to survive summary judgment. *Vicknair v. La. Dep't of Pub. Safety & Corr.,* 555 F. App'x 325, 331 (5th Cir. 2014) ("[P]laintiff's subjective belief, without more, that an adverse employment action was retaliatory is insufficient to survive summary judgment."); *see also Jones v. Jefferson Parish*, No. 12-2191, 2013 U.S. Dist. LEXIS 163836, *41 (E.D. La. Nov. 18, 2013) (where causation evidence consisted solely of speculation, opinions, and conclusory allegations, but no factual evidence, the plaintiff's subjective beliefs of retaliation were insufficient to survive summary judgment).

Moreover, while Plaintiff labels her discharge as "retaliatory," it is clear from her testimony she does not actually believe her termination was in retaliation for engaging in protected activity under the FLSA; rather she simply believes she should not have been terminated.[20] Specifically, Plaintiff repeatedly states that she believes she was terminated

---

[20] *See, e.g.,* Pl. Depo. pp. 68:23-69:21; 100:17-101:7 (Oti believes they were mistaken for terminating her for insubordination and assault because she wasn't at work when she spoke rudely to the ADON over the phone and Zuza left her a voicemail apologizing for the wrongful termination and telling Plaintiff to come back to work); Pl. Depo. 116:4-18; 122:5-124:25 (Plaintiff is basing her retaliation claim on the fact that they never investigated the

because Dimes brought several complaints about her to the attention of the other decision-makers in Plaintiff's termination.[21] Pl. Depo. pp. 120:23-121:4. Specifically, Plaintiff admits she was terminated because she expressed her unwillingness to move to the Medicaid Hall and threatened to report Dimes for taking patient records home during a phone call with Dimes shortly before her termination. *See, e.g.,* Pl. Depo. pp. 180:25-183:13; 184:17-185:12; 101:2-102:9. Moreover, Oti admits that, at the time of her termination, she had no reason to believe she was terminated for any other reason than Green Oaks' belief that she was insubordinate towards Dimes.[22] Pl. Depo. pp. 101:2-102:9. Finally, Plaintiff admits that she did not report any misconduct or violation of the law that the company relied upon in its decision to terminate her. Pl. Depo. 128:15-129:4.

According, in light of Plaintiff's failure to articulate any causal connection between any alleged protected activity and her termination, she cannot establish her requisite *prima facie* case, and the Court must grant summary judgment against Plaintiff's retaliation claim under the FLSA.

3.    Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of retaliation, Defendant sets forth a legitimate, non-retaliatory reason for Plaintiff's termination, and Plaintiff fails to demonstrate pretext.

Even if Plaintiff could establish a *prima facie* case of retaliation – which she cannot – Defendant has articulated a legitimate, non-retaliatory reason for her termination, namely, Plaintiff's insubordinate and unprofessional behavior towards the ADON. Moreover, Plaintiff is

---

reasons for her termination, she was never written up prior to her termination, and Green Oaks didn't follow its "chain of commands").

[21] Oti believes the individuals involved in her termination decision were Chidawa Thandiwe, Patty Foucault, and Glynn Brown, although she does not know who made the final termination decision. Pl. Depo. pp. 64:18-67:9.

[22] While Oti vaguely contends her termination was improper because Green Oaks failed to follow certain unspecified progressive discipline steps, referred to by Oti as "chain of commands," Pl. Depo. pp. 94:23-96:21; 116:4-18, this assertion is clearly refuted by Green Oaks' explicit Termination of Employment policy, which provides that insubordination, specifically including the "refusal to perform work on the floor, shift, or in the manner assigned by your Supervisor, or refusal of the directive of any authorized management representative," constitutes grounds for immediate termination of employment. Pl. Depo. pp. 24:12-26:6, Ex. 7 at Def. App. 248-249 and 8 at Def. App. 303-304.

unable to satisfy her ultimate burden of showing that Defendant's legitimate reason for her termination is pretextual and that, but for her engagement in a protected activity, she would not have been terminated.

      a.    Defendant sets forth a legitimate, non-retaliatory reason for Plaintiff's termination.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case necessary to support her retaliation claim under the FLSA, Defendant had a legitimate, non-retaliatory reason for Plaintiff's termination.  Specifically, Plaintiff was terminated for her insubordinate and unprofessional behavior towards Green Oaks' ADON. Pl. Depo. pp. 101:2-102:9; Zuza Decl. at Def. App. 364 ¶ 12.

It is well-established that insubordinate conduct constitutes a legitimate, non-retaliatory reason for an employee's termination. *See, e.g., Conklin v. Senior Hous. Servs.*, No. 3:05-CV-0141-P, 2006 U.S. Dist. LEXIS 4308 (N.D. Tex., Feb. 3, 2006) ("A termination based on poor performance and insubordination is legitimate and non-discriminatory."); *Morriss v. Concordia Univ.*, No. A-05-CA-043 LY, 2006 U.S. Dist. LEXIS 33190, 16-17 (W.D. Tex., May 11, 2006) (insubordination and disrespect towards supervisors constitute legitimate non-discriminatory reasons for termination); *Block v. Kelly Servs.*, 197 Fed. Appx. 346, 349 (5th Cir. 2006) ("Obviously, insubordination can serve as a legitimate reason for an employer to take an adverse employment action against an employee."), citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). Accordingly, Defendant has established a legitimate, non-retaliatory reason for Plaintiff's termination, and any inference of retaliation raised by her *prima facie* case, if any, is destroyed.

b.  Plaintiff fails to demonstrate that Defendant's proffered legitimate, non-retaliatory reason for her termination is pretextual and that her protected conduct was the "but-for" cause of her termination.

Because Defendant has articulated a legitimate, non-retaliatory reason for her termination, Plaintiff must demonstrate that this reason is merely a pretext for retaliation. *Hagan*, 529 F.3d at 623-24. Evidence that raises only a weak inference of pretext is insufficient to create a genuine issue of material fact in the retaliation context. *Cole*, 2014 U.S. Dist. LEXIS 96754 at *60, citing *Rios*, 252 F.3d at 381. Moreover, the ultimate determination in an unlawful retaliation case is whether the protected conduct was a "but-for" cause of the adverse employment decision. *Cole*, 2014 U.S. Dist. LEXIS 96754 at *60, citing *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996). Accordingly, the employee must show that the employer's explanation is unworthy of credence and that, "but for" her protected activities, she would not have suffered the adverse employment action. *Cole*, 2014 U.S. Dist. LEXIS 96754 at *61, citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). The burden here is more stringent than it is at the "causal link" step in the p*rima facie* case. *Lackey v. SDT Waste and Debris Services, LLC*, No. 11-1087 Section "H" (4), 2014 U.S. Dist. LEXIS 108272, *9 (E.D. La., Aug. 6, 2014); *Long*, 88 F.3d at 308 ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated in the absence of protected conduct.").

Here, Plaintiff's testimony makes it clear that her protected activity under the FLSA, if any, was far from the "but for" cause of her termination. Rather, as Plaintiff's own testimony establishes, the cause of her termination was her insubordination towards the ADON on or about March 25, 2013, during a phone call in which Plaintiff expressed an unwillingness to change hallways in direct contravention of Dimes' order and threatened to report Dimes for taking home

patient files. Pl. Depo. 107:24-113:7; 180:25-183:13; 184:17-185:12. While Plaintiff contends (albeit, incorrectly) that Green Oaks was mistaken in their belief that Oti's conduct during this phone call constituted insubordination because Plaintiff was at home when the conversation occurred, Pl. Depo. pp. 91:20-94:22, even if an employer mistakenly concludes that an employee violated company policy, such mistake is insufficient to demonstrate that the employer's stated rationale for terminating the employee was a pretext for retaliation. *Miller v. Metro Ford Automobile Sales, Inc.*, 519 Fed. App'x 850, 853 (5th Cir. 2013); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (explaining that a plaintiff's assertion of innocence relating to the stated reason for termination does not create a factual issue as to the falsity of that reason because the issue is not the truth or falsity of the plaintiff's wrongdoing, but rather is whether the employer believed the plaintiff was at fault and acted upon that belief in good faith.).

Besides Oti's illogical contention that she was not insubordinate towards Dimes because she was at home during this phone conversation, along with her erroneous assertion that Green Oaks was required to follow some sort of progressive discipline procedure prior to terminating her, she sets forth no arguments to rebut Green Oaks' asserted legitimate, non-retaliatory reason for her termination. Moreover, Plaintiff fails to carry her ultimate burden of establishing that her engagement in a protected activity was, in fact, the "but for" cause of her termination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim under the FLSA.

E.   **EVEN IF PLAINTIFF COULD ESTABLISH THE REQUISITE ELEMENTS FOR HER RETALIATION CLAIM, WHICH SHE CANNOT, SHE IS NOT ENTITLED TO ANY DAMAGES FOR BACK OR FRONT PAY[23]**

Even assuming, *arguendo*, that Plaintiff could establish a valid retaliation claim under the FLSA, which she cannot, she would be precluded from recovering both back pay and front pay if this matter were to proceed to trial because, based on her own deposition testimony, she unreasonably rejected Green Oaks' unconditional offer of reinstatement.   Plaintiffs have a statutory duty to minimize damages by using reasonable diligence to find other suitable employment. *Forrest v. Dynamic Security, Corp.*, No. 00-3423, 2002 U.S. Dist. LEXIS 10377, *36 (E.D. La., May 24, 2002).   In *Ford Motor Co. v. EEOC*, the Supreme Court recognized that an employer can toll the accrual of backpay liability by unconditionally offering plaintiff a job substantially equivalent to one from which she was terminated. 458 U.S. 219, 233-34 (1982). Accordingly, the Supreme Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability."[24]   *Id.* at 232. After the employer meets its initial burden of establishing that the plaintiff failed to accept an unconditional offer to a substantially equivalent job, the plaintiff must establish "special circumstances" justifying a rejection of the unconditional offer.   *Dunlap v. Liberty Natural Resources Products, Inc.*, No. 3:12-cv-01635-SI, 2013 U.S. Dist. LEXIS 167165, *39 (D. Or., Nov. 25, 2013), citing *Boehm v. American Broadcasting Co. Inc.*, 929 F.2d 482, 485 (1991).

---

[23] The facts and evidence referenced in this section are undisputed only for purposes of this Motion.

[24] While *Ford Motor Co.* specifically addressed back pay damages in a Title VII action, courts have extended its reasoning to other federal employment statutes. *See, e.g., Mahoney v. Ernst & Young*, 487 F. Supp. 2d 780, 816, n. 174 (S.D. Tex. 2006) (extending application of *Ford Motor Co.* to claims brought under the Family and Medical Leave Act and the Americans with Disabilities Act).   Additionally, courts have held that the logic behind tolling back pay damages applies with equal force to front pay damages. *See, e.g., Mahoney*, 487 F. Supp. 2d at 816, n. 174; *Lewis Grocer Co. v. Holloway*, 874 F.2d 1008, 1012 (5th Cir. 1989); *Forrest v. Dynamic Sec. Corp.*, No. 00-3423, 2002 U.S. Dist. LEXIS 10377, *41 (E.D. La., May 24, 2002).

1. <u>Plaintiff rejected Defendant's unconditional offer of reinstatement to a substantially equivalent position.</u>

Here, Plaintiff testified that, one week following her termination, Zuza, the then-Regional People Strategy Manager at SCCM with consulting responsibility to the Green Oaks facility (Zuza Decl. at Def. App. 362 ¶ 3), contacted her on behalf of Green Oaks and offered Plaintiff reinstatement to her prior position, including back pay for the week that had elapsed since her termination, and a raise that Plaintiff had sought prior to her termination.[25] Pl. Depo. pp. 187:8-15; 142:8-144:2. Additionally, Plaintiff testified that Zuza told her that she would "work with [her]," on giving her whatever she wanted as long as she would come back to work at Green Oaks. Pl. Depo. pp. 142:8-144:9. Accordingly, based upon Plaintiff's testimony, it is clear that the unconditional offer of reinstatement was to <u>at least</u> a "substantially equivalent" position, if not to a better position, compared to the position previously held by Plaintiff. *See Chumbley v. Sealy, Inc.*, No. 4:08-cv-379-A, 2009 U.S. Dist. LEXIS 65839, *14 (N.D. Tex., July 29, 2009), *quoting Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990) ("substantially equivalent employment" means employment "which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the position plaintiff was seeking). Plaintiff rejected Defendant's unconditional offer of reinstatement. Pl. Depo. pp. 141:11-15; 188:1-5.

2. <u>Plaintiff's rejection of Defendant's unconditional offer of reinstatement was unreasonable and not justified by any "special circumstances."</u>

Plaintiff's rejection of Defendant's unconditional offer of reinstatement was unreasonable and not justified by any "special circumstances." *See Ford Motor Co.*, 458 U.S. at 232. Plaintiff

---

[25] Plaintiff did not initiate legal action against the company until October 7, 2013. Pl. Depo. 137:4-6. Accordingly, this offer was made prior to Plaintiff's commencement of legal action and could not therefore have been conditioned upon Plaintiff dismissing or abandoning her claims.

claims she turned down this unconditional offer of reinstatement because she was "scared" to return to Green Oaks and did not want to work for Dimes again. Pl. Depo. pp. 138:4-140:10. Plaintiff admits she would have accepted the offer of reinstatement if she could have worked for someone other than Dimes. Pl. Depo. pp. 144:20-145:8. However, Plaintiff did not ask Zuza whether she would have had to work with Dimes if she accepted the offer, despite Zuza telling Plaintiff that they would "work with [her]." Pl. Depo. pp. 140:19-23; 144:14-145:8. Moreover, Dimes was terminated from Green Oaks by – or shortly after – the date of this conversation, specifically on April 9, 2013, for reasons unrelated to Plaintiff. Zuza Decl. at Def. App. 364 ¶ 15. Accordingly, Plaintiff would not have had to work with Dimes had she accepted the job offer.

Rejection of a reinstatement offer is evaluated under an objective standard, namely whether a reasonable person would have rejected the offer of reinstatement. *Dunlap*, 2013 U.S. Dist. LEXIS 167165 at *42. Hurt feelings or stress about returning to the workplace are not special circumstances to justify a rejection of an offer of reinstatement, *id.* at *43, nor are "personal reasons," such as not wanting to work under the same manager. *Giandonato v. Sybron Corp.*, 804 F.2d 120, 124 (10th Cir. 1986). Accordingly, Plaintiff's rejection of Green Oaks' unconditional offer of reinstatement based on groundless and unexpressed concerns about working for the same ADON was unreasonable.

Therefore, even if Plaintiff could establish her retaliation claim under the FLSA, which she cannot, she is not entitled to receive any front pay or back pay otherwise resulting from such violation because she unreasonably rejected Defendant's offer of unconditional reinstatement to a substantially equivalent position, along with Defendant's offer to pay Plaintiff for the time that had elapsed since her termination. *See, e.g., Mahoney v. Ernst & Young*, 487 F. Supp. 2d 780, 816, n. 174 (S.D. Tex. 2006) ("an employee's refusal of an offer of reinstatement to a

substantially equivalent job tolls back pay and front pay"); *Figgs v. Quick Fill Corporation*, 766 F.2d 901, 903-04 (5th Cir. 1985) (finding that defendant made an unconditional offer of reinstatement to the plaintiff, which the plaintiff rejected, thus tolling the accrual of back-pay liability). Accordingly, Green Oaks is entitled to summary judgment as to Plaintiff's entitlement to any award of front and back pay in connection with her FLSA retaliation claim.

## V. CONCLUSION AND REQUEST FOR RELIEF

Defendant is entitled to summary judgment on all of Plaintiff's claims, as demonstrated above. First, Plaintiff cannot meet her burden of establishing that she in fact worked uncompensated overtime hours or worked through meal breaks for which she was not paid and that implicated overtime hours, nor can she demonstrate sufficient evidence to show the amount and extent of such alleged unpaid overtime as a matter of just and reasonable inference. Moreover, Defendant's timekeeping and payroll records for Plaintiff refute her unsupported and speculative assertions of unpaid overtime.

Second, Plaintiff cannot meet her burden of establishing a *prima facie* case of retaliation under the FLSA, because she fails to demonstrate that a causal connection exists between any alleged protected activity and her termination. Further, Defendant has articulated a legitimate, non-retaliatory reason for Plaintiff's discharge, and Plaintiff has not carried her burden to show that retaliation was the "but-for" cause of her termination. Moreover, even if Plaintiff could otherwise succeed on her retaliation claim, her rejection of Defendant's unconditional offer of reinstatement precludes the availability of back or front pay damages.

Accordingly, Defendant Green Oaks respectfully requests that this Court grant this Motion for Summary Judgment, enter judgment in favor of Green Oaks, and grant Green Oaks such further relief, in law or in equity, to which it is justly entitled.

Respectfully submitted,

Robert E. Sheeder
Attorney-in-charge
Texas Bar No. 18174300
Robert.Sheeder@bgllp.com
Lauren A. West
Texas Bar No. 24070831
Lauren.West@bgllp.com

Bracewell & Giuliani LLP
1445 Ross Avenue, Suite 3800
Telephone: (214) 758-1643
Facsimile: (214) 758-8340

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2014, a true and correct copy of the foregoing document was served *via certified mail, return receipt requested*, on Plaintiff's counsel of record below:

Gerald J. Smith Sr.
attorney@gjsmithlaw.com
P.O. Box 200395
Arlington, Texas 76006

Robert E. Sheeder

#4743633.11